2017-0009707-CV
🔒 **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
COBB COUNTY, GEORGIA

**17100521**
LEONARD - 53
JAN 23, 2017 02:04 PM

*Rebecca Keaton*
Rebecca Keaton, Clerk of Superior Court
Cobb County, Georgia

## IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| **CARPETCARE** | ) | |
| **MULTISERVICES, LLC** | ) | **CIVIL ACTION FILE** |
| | ) | |
| **Plaintiff,** | ) | **NO.** |
| | ) | |
| **V.** | ) | |
| | ) | |
| | ) | |
| **ELGIN THOMAS CARLE** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

### COMPLAINT FOR BREACH OF CONTRACT
### ATTORNEY'S FEES AND INJUNCTION

---

COMES NOW CarpetCare Multiservices, LLC and herein file the instant Complaint for Breach of Contract, Attorney's Fees, and Injunction, against Elgin Thomas Carle and show this Court the following:

### Jurisdiction and Venue

1. CarpetCare Multiservices, LLC ("Plaintiff") is a Georgia domestic limited liability company with its principal office located at 7565 Owl Creek Dr., Douglasville, Georgia 30134.

2. Elgin Thomas Carle  ("Defendant") is an individual who is reasonably believed to reside at 604 Lullingstone Drive, SE, Marietta, Cobb County, Georgia and may be served with a summons and copy of this Complaint at that address.

**Exhibit
1**

3. This case involves a contract executed by the parties in which Plaintiff seeks injunctive relief.

4. The Contract, attached hereto as Exhibit "A," has a provision identifying Douglas County as the selected venue.  However, under <u>Huddle House, Inc. v. Paragon Foods, Inc.</u>, 263 Ga. App. 382, 384 (Ga. Ct. App. 2003), that provision is void as against public policy.

5. Accordingly, and by virtue of the allegations set forth above, jurisdiction and venue are proper in this Court.

## General Allegations

6. Plaintiff is in the business of providing various services to apartment complexes, including carpet cleaning and repair, and bathroom and kitchen material resurfacing.

7. Plaintiff provides its services primarily through independent contractors such as Defendant.

8. Plaintiff invests significant resources in developing and nurturing its client base.

9. Plaintiff invests significant resources in hiring and training independent contractors.

10. The independent contractors are the primary in-person contact between Plaintiff and the apartment complexes Plaintiff services.

11. As a condition of employment with Plaintiff, independent contractors are required to execute an agreement restricting the independent contractor's ability to take advantage of the relationships that are developed and nurtured on the Plaintiff's time and dime.

12. These relationships are a legitimate business interest that justifies the need for restrictive covenants.

13. At all times relevant hereto, Defendant was an independent contractor of Plaintiff.

14. On or about January 15, 2015, Defendant executed the Independent Contractor Agreement attached hereto as Exhibit "A" ("the Agreement").

15. Section 3 of the Agreement prohibits Defendant from providing the services identified therein to any customer with whom Defendant had contact during the term of his employment for a period of one year from the last date of work.

16. Defendant last worked for Plaintiff on November 10, 2016.

**Breach of Contract**

17. Among the complexes where Plaintiff worked was Greenhouse Apartments in Kennesaw ("Greenhouse").

18. Plaintiff has learned that Defendant is providing resurfacing at Greenhouse in violation of the Agreement.

19. Plaintiff was informed by management at Greenhouse that it no longer would be using CarpetCare for resurfacing.

20. By virtue of the allegations set forth above, Defendant has breached the Agreement.

21. Plaintiff is entitled to enforcement of the Agreement's restrictive covenants, and for damages arising from any breach.

### Attorney's Fees

22. Plaintiff incorporates paragraphs 1-21 above as if fully set forth herein.

23. Pursuant to Section 6 of the Agreement, Plaintiff is entitled to recover the costs and attorney's associated with the enforcement of the restrictive covenants contained therein.

24. In the alternative, in light of Defendant's intentional breach of the Agreement and misrepresentation through counsel, as well as the allegations set forth above, Defendant has acted in bad faith, has been stubbornly litigious and has caused Plaintiff unnecessary trouble in expense for which Plaintiff is entitled to recover attorney's fees and expenses under O.C.G.A. § 13-6-11.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant, that an injunction issue to enforce the restrictive covenants, for damages arising of

Defendant's breach, for attorney's fees, and expenses of litigation, and for such

other and further relief deemed necessary and just by this Court.

This the <u>23rd</u> day of <u>January</u>, 2017.

                                                           _____
                                                           Ryan L. Isenberg
                                                           Georgia Bar No. 384899
                                                           Attorney for Plaintiffs

Isenberg & Hewitt, P.C.
Attorneys at Law
6600 Peachtree Dunwoody Road
600 Embassy Row, Suite 150
Atlanta, Georgia 30328
770-351-4400 (Voice)
770-828-0100 (Fax)
ryan@isenberg-hewitt.com

# IN THE SUPERIOR COURT OF COBB COUNTY
## STATE OF GEORGIA

CARPETCARE                        )
MULTISERVICES, LLC                )        CIVIL ACTION FILE
                                  )
    Plaintiffs,            )        NO.
                                  )
V.                                )
                                  )
                                  )
ELGIN THOMAS CARLE                )
                                  )
    Defendants.            )

## VERIFICATION OF COMPLAINT

In person before the undersigned officer authorized by law to administer

oaths appeared _Doris Frost_, who after being duly sworn according to

law deposes and says on oath that the facts in the foregoing Complaint are true and

correct to the best of his knowledge and belief.

_____
Authorized Agent

Sworn to and subscribed before me
this the 20 day of January ,2017

_____
Notary Public
My Commission Expires: 4-13-2020

KELVIN MCDONALD
Notary Public - State of Georgia
Henry County
My Commission Expires Apr 13, 2020

## INDEPENDENT CONTRACTOR
## CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT

THIS CONFIDENTIALITY AND NON-DISCLOSURE AGREEMENT (hereinafter sometimes "Agreement") is entered into effective as of the start of business on the _15TH_ day of _JANUARY_____, 201_5_ (the Effective Date), by and between CARPETCARE MULTI SERVICES, LLC a Georgia Limited Liability Company (the "Company") and the INDEPENDENT CONTRACTOR (hereinafter sometimes "Contractor"), specifically _ELGIN CARLE_____, whose address is _604 LULLINGSTONE DR SE MARIETTA GA 30067_ (sometimes collectively the "Parties").

WHEREAS the Company has engaged Contractor to perform services on behalf of the Company and serve as an Independent Contractor pursuant to a separate Independent Contractor Agreement and not as an Employee; and

WHEREAS the Company is engaged in the business of bathroom and kitchen fixture resurfacing, carpet cleaning services, carpet repair services, flood control services for floor and carpet interiors, mold and mildew control of floor and carpet surfaces, re-padding floors for carpeted surfaces and odor control of those surfaces; and

WHEREAS, for the performance of services by the Contractor, the Company must disclose to the Contractor some of which it considers proprietary and confidential; and

WHEREAS the business of the Company is a highly competitive one and the Company has developed such aforementioned proprietary and Confidential Information including trade secrets, customer and vendor lists and information and certain other business information regarding the Company's customers, vendors and suppliers, and its methods of operation and processes, all of which are the product of its experience and efforts, and of great value to the Company; and

WHEREAS, the Company has expended significant capital and time to develop such information and the Company desires to protect such information and would be harmed by the wrongful use of the same by the Contractor or his agents or assigns or any other party; and

WHEREAS disclosure of such Confidential Information to persons or entities outside the Company would result in substantial harm to the Company, and adversely affect its ability to conduct its business;

THEREFORE, in consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

12 2014                                    1

**Exhibit**

**A**

## 1. NON-DISCLOSURE OF CONFIDENTIAL INFORMATION.

Contractor acknowledges that in connection with Contractor's engagement by and association with the Company that the Contractor shall obtain (or has already obtained) Confidential Information, and the Contractor agrees that he/she, and any person as defined herein, will not disclose to the public at large or to any other individual, party, Company, partnership or other entity of any sort, any Confidential Information, except with Company's express prior written consent. The confidentiality obligations imposed herein shall cease to apply to any item of Confidential Information after the earliest of the date on which Contractor provides the Company with written evidence clearly establishing that such item of Confidential Information: (i) was publicly available prior to the Contractor's receipt of such item of Confidential Information, or (ii) has become generally known to the public in the United States through no act or fault of Contractor.

## 2. CONFIDENTIAL INFORMATION: DEFINITION

As used in this agreement, Confidential Information shall include, but shall not be limited to, information and data relating to the business of the Company (whether constituting a trade secret or not) which has been disclosed to the Contractor, or of which the Contractor learned or discovered as a consequence of, or through his relationship with the Company.  Without limiting the foregoing, Confidential Information specifically includes the following:

    a.    Identities of and information regarding customers and prospective customers and strategies to identify prospective customers;

    b.    Identities of and information regarding the Company's suppliers, vendors and those with whom the Company contracts;

    c.    Financial information and analyses, including market share information, sales and revenue projections and expenses relating to the Company or the Company's customers or suppliers and strategies for the increase or expansion of same;

    d.    Cost of goods and manufacturing, pricing, whether retail, wholesale or discounted, of the Company's products or services;

    e.    Profit margins or profit and loss information of the Company;

f.     Methods of operations or processes of the Company or any specific

       thereof, including its re-surfacing, cleaning, mold treatment and odor

       treatment;

g.     Drawings, facsimiles, copies, sketches or renderings of any sort,

       manifested in any corporeal or any electronic or computerized form;

h.     Any computer program, systems or code used to control the logistics,

       work deployment or dispatching of the Company; and

i.     Any technical data or know-how, including research, product plans,

       software, developments, inventions, processes, formulae, technology,

       designs, drawings, engineering, hardware configuration information,

       marketing, finances or other business information disclosed to me by

       the Company either directly or indirectly in writing, orally or by

       drawings or by observation of any item mentioned herein.

3. NON-SOLICITATION; NON-COMPETITION.

a. The Contractor agrees that during the term of Contractor's relationship with the
Company, and for a period of one (1) year after Contractor's last day worked for the
Company, regardless of the reason for Contractor's termination, Contractor will not
provide any service identified herein to any customer with whom Contractor had any
contact during the term of his employment with the Company.

b. Notwithstanding a. above, it is understood and agreed by the parties that Contractor
may have enjoyed certain business relationships prior to entering into its relationship with
the Company, and that those relationships specifically identified in Exhibit A and only
those relationships identified thereon, which exhibit is attached hereto and made a part
hereof, are specifically excluded from any restrictive covenant created hereby.

c. The Contractor agrees that during the term of Contractor's relationship with Company,
and for a period of one (1) year after Contractor's last day worked for the Company,
regardless of the reason for Contractor's termination, Contractor will not directly or
indirectly, on Contractor's own behalf or on behalf of any other person, firm, partnership,
association, corporation, business organization, entity or enterprise take any action to

contact, divert, canvas or solicit any of the Company's customers with whom or with
which Contractor had any relationship during the term of Contractor's association with
the Company, for the purpose of offering services identified herein.

4.  OWNERSHIP AND RETURN OF CORPORATE MATERIALS.

The Contractor agrees that within forty-eight (48) hours of the notice of termination
(regardless of the effective date of termination or the noticing party) of the business
relationship between the Contractor and the Company, without regard to the
circumstances of such termination, the Contractor agrees to return and deliver to the
Company (without retaining, copying, recreating or delivering to any other party or
entity) any and all marketing materials, advertising pieces, devices, records, data, notes,
reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches,
materials, equipment, other documents or property, or reproductions of any
aforementioned items belonging to the Company, its successors or assigns.  Further, the
Contractor acknowledges and agrees that any such item mentioned in this section is
owned solely by the Company and the Contractor relinquishes all ownership in such
items, whether or not the Contractor was involved in the creation or development of any
such item and the Contractor shall make no claim of ownership thereto.

5.  ACKNOWLEDGMENT OF REASONABLENESS.

The parties hereto agree that the obligations on the part of the Contractor specified in this
Agreement are fair and reasonable and are necessary to protect the interests of the
Company in whose favor said covenants and agreements are imposed in light of the
nature of the Company's business and Contractor's involvement in such business.
Further, the restrictions imposed by this Agreement are not greater than are necessary for
the protection of the Company in light of the substantial harm that the Company will
suffer should Contractor breach any of the provisions of said agreements; and the
Contractor's covenants and agreements contained in this Agreement form material
consideration for this Agreement and the engagement of the Contractor's services by the
Company, and lastly, that the covenants and agreements of the Contractor set forth in the
Agreement are separate and divisible covenants; and that if for any reason any such
provision is held by a court of competent jurisdiction to be invalid or unenforceable in
whole or in part, the same shall not affect the validity or enforceability of any other
provision contained in this Agreement.  If necessary to preserve the validity and
enforceability thereof, and if such reduction is permitted by then applicable law, the
duration and scope of any covenant or agreement set forth in the Agreement shall be
reduced by the court to the maximum duration and scope permitted by the substantive
law under which such restrictions are interpreted.

6.  REMEDY FOR BREACH.

Contractor agrees that the remedies at law of the Company for any actual or threatened
breach by Contractor of the provisions contained in this Agreement would be inadequate
and that the Company shall be entitled to specific performance of the covenants and

obligations found in such paragraphs or injunctive relief against activities in violation of such paragraphs, or both, by temporary or permanent injunction or other appropriate judicial remedy, writ or order, in addition to any damages which the Company may be legally entitled to recover. Contractor also agrees that Contractor shall pay all costs and attorney fees incurred by the Company in enforcing the restrictive provisions in this Agreement and in recovering damages therefor. Contractor acknowledges and agrees that the covenants and provisions contained in this Agreement shall be construed as agreements independent of any other provision of this or any other agreement between the parties hereto, and that the existence of any claim or cause of action by Contractor against the Company, whether predicated upon this or any other agreement, shall not constitute a defense to the enforcement by the Company of said covenants.

## 7. NON-DISPARAGEMENT

The Company and Contractor each covenant and agree that neither will, directly or indirectly, take any action, including without limitation the making of disparaging statements concerning the other, or the business, practices, officers, directors or employees of either, that is reasonably likely to cause injury to either party, or any of its employees and any, vendor, supplier, customer, distributor, employee, consultant or other business associate of either party, either during the term of this Agreement or after termination.

## 8. MODIFICATION

This Agreement may not be modified except by amendment reduced to writing and signed by both Company and Contractor. No waiver of this Agreement shall be construed as a continuing waiver or consent to any subsequent breach thereof.

## 9. ENTIRE AGREEMENT

This Agreement sets forth the entire agreement and understanding between the parties relating to the subject matter herein and supersedes all prior discussions between the parties. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged. Any subsequent change or changes in the Agent's duties or commission will not affect the validity or scope of this Agreement.

## 10. GOVERNING LAW; CONSENT TO PERSONAL JURISDICTION

THIS AGREEMENT WILL BE GOVERNED BY THE LAWS OF THE STATE OF GEORGIA WITHOUT REGARD FOR CONFLICTS OF LAWS PRINCIPLES. THE CONTRACTOR HEREBY EXPRESSLY CONSENTS TO THE PERSONAL JURISDICTION AND VENUE OF THE STATE AND FEDERAL COURTS

LOCATED IN THE STATE OF GEORGIA AND PARTICULARLY, SUPERIOR
COURT OF DOUGLAS COUNTY, GEORGIA, OR, TO THE EXTENT THAT IT HAS
JURISDICTION, THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF GEORGIA FOR ANY LAWSUIT FILED THERE AGAINST THE
CONTRACTOR BY THE COMPANY ARISING FROM OR RELATING TO THIS
AGREEMENT.

## 11. SEVERABILITY

If any provision of this Agreement is deemed void by law or otherwise unenforceable,
then the remaining provisions will continue in full force and effect.

## 12. HEADINGS

Section headings are not to be considered a part of this Agreement and are not intended to
be a full and accurate description of the contents hereof.

## 13. ADDITIONAL ACKNOWLEDGMENTS

Both parties acknowledge and agree that: (a) the parties are executing this Agreement
voluntarily and without any duress or undue influence; (b) the parties have carefully read
this Agreement and have asked any questions needed to understand the terms,
consequences, and binding effect of this Agreement and fully understand them; and (c)
the parties have sought the advice of an attorney of their respective choice, if so desired,
prior to signing this Agreement. The Contractor further acknowledges that any item
defined as Confidential Information herein includes information that may be subject to
protection as a Trade Secret under Georgia law, independently of this agreement, and that
the statutory protection against disclosure that governs such trade secrets may be even
more restrictive than that required by this Agreement.

## 14. SURVIVAL OF OBLIGATIONS

Notwithstanding any termination of the business relationship between the Contractor and
the Company, the Contractor acknowledges and agrees that the Contractor's obligations
and representations pursuant to this Agreement shall survive such termination and shall
remain enforceable and in effect, and shall remain binding upon the Contractor.

## 15. ADDITIONAL DOCUMENTS

If any other provisions or agreements are necessary to enforce the intent of this
document, both parties agree to execute such provisions or agreements in a timely
manner.

## 16. COUNTERPARTS

This Agreement may be executed in counterparts, each of which shall be deemed an original and together shall constitute one and the same Agreement.

## 17. NOTICES

All notices to be made pursuant to this Agreement by either party shall be deemed sufficiently given if made in person or if sent by facsimile during normal business hours of the Company or by courier or by United States certified mail, return receipt requested, addressed as follows:

If to the Company to:

CARPETCARE MULTI SERVICES, LLC
7565 Owl Creek Drive
Douglasville, GA 30134

If to the CONTRACTOR to:

Elgin Carle
[Name of Contractor]

604 Lullingstone DR SE     GA 30067
[Address]

This Agreement, consisting of __12__ pages, including this page, is entered into this the __15__ day of __January__, 20 __15__.

CARPETCARE MULTI SERVICES, LLC :

by:

Witness

12/2014                                7

CONTRACTOR:

_____

_____
Witness

ACKNOWLEDGMENT

STATE OF _____
COUNTY OF _____

PERSONALLY came and appeared before me, the undersigned authority, on this day
appeared _____ and _____, known to me to be the
persons whose names are subscribed to the foregoing instrument, and acknowledged to
me that they executed the instrument for the purposes and consideration expressed in the
instrument.

   GIVEN under my hand and seal of office on this the _____ day of
_____, 20___.


_____
NOTARY PUBLIC
My Commission Expires: